**RESOLUTION TRUST CORPORATION, as Receiver for Colonial Savings Association of America, Liberal, Kansas, Plaintiff,**

v.

**William T. DAVIES, Lisa M. Davies, Larry D. Owsley, E. Kay Owsley, Board of County Commissioners of Seward County, Kansas, Peoples National Bank of Liberal, Columbia Savings, F.A., Southwestern Savings and Loan Association of Hugoton, Defendants.**

Civ. A. No. 90–1146–FGT.

United States District Court,
D. Kansas.

June 3, 1993.

Jack C. Marvin and Victor S. Nelson, Morrison & Hecker, Wichita, KS, for plaintiff.

J. Gregory Swanson, Swanson Law Offices, Liberal, KS, for defendants.

### MEMORANDUM AND ORDER

THEIS, Senior District Judge.

This matter is before the court on the motion for summary judgment filed by Resolution Trust Corporation (RTC) as Receiver for Colonial Savings Association of America, Liberal, Kansas (Colonial) against defendants William T. Davies and Lisa M. Davies (the Davies). Doc. 65. RTC brought this action seeking judgment on a promissory note executed by the Davies and foreclosure of a mortgage securing the payment of the note. Doc. 1.

The Davies filed an answer admitting they signed the promissory note and mortgage at issue, but alleging that their signatures were procured by negligent misrepresentations and fraudulent misrepresentations by Colonial and defendant Larry D. Owsley (Owsley). The Davies further alleged that Colonial and Owsley breached certain agreements with them, thereby relieving them of their responsibility to pay. By way of affirmative defenses, the Davies alleged estoppel, failure of consideration, and breaches of contract. The Davies further alleged that their signatures were procured by the negligent and fraudulent misrepresentations of Colonial and Owsley. The Davies alleged that Colonial and Owsley failed to provide free and clear title, refused to close the loan, refused to comply with the terms of the agreements with the Davies, allowed Owsley to withdraw all of the construction loan proceeds notwithstanding Colonial's and Owsley's knowledge that the construction was not inspected, not completed, and not finished in a workmanlike

manner. The Davies alleged that they are entitled to cancellation and rescission of the note, mortgage, and all other documents. Doc. 5.

The Davies also filed a cross-claim against defendants Larry D. Owsley and E. Kay Owsley and a counterclaim against RTC/Colonial. The counterclaim and cross-claim alleged that the Davies executed a contract for the sale of real property under the negligent and fraudulent misrepresentations of Colonial and Owsley. The Davies further alleged that, under the negligent and fraudulent misrepresentations of Colonial and Owsley, they were told to execute the contract in the amount of $315,000.00 to enable Owsley to obtain 80% financing for a construction contract. The Davies alleged that they later learned the construction contract was for less than $315,000.00. The contract for sale of real estate contained, inter alia, the following provisions:

> This contract refers to a single family residence to be built on the above captioned property in a workmanship like manner and will be warranted against any and all defects for a period of one (1) year, ...
>
> . . . .
>
> Purchasers agree to take out the initial construction loan in his [sic] name with Colonial Savings & Loan, of which Seller agrees to pay all interest charges,
>
> The contract is further contingent on Seller taking in trade the Purchasers [sic] vacant lot, legal [sic] described as: Lots 15, 16, & 17, Block 1, Summers First Addition to the City of Liberal. Said Lot is subject to a first mortgage with First National Bank of Liberal, Kansas, which Seller agrees to assume and pay as of the date of this contract,
>
> Purchaser agrees to place his existing home at 650 Lilac on the market during the construction period, to procure a Buyer. If a Buyer is found that has a home to trade, Seller agrees to trade Buyers [sic] home in trade, subject to his standard procedure of appraisals and discounts on the trade in home. In the event the home does not sell prior to the completion of the new home, Seller agrees to purchase the home at $157,500, less a 12% discount.

The Davies further asserted that Colonial and Owsley were aware of these provisions in the contract. The Davies alleged that Owsley has breached the contract by failing to pay the interest charges on the loan.

The Davies' counterclaim and cross-claim further asserted that under negligent and fraudulent misrepresentations of Colonial and Owsley, they executed a promissory note in the amount on $252,000.00 on May 2, 1988. The Davies alleged that Colonial and Owsley informed them that Owsley would jointly execute the note, and that Owsley did not do so. The Davies claimed that under negligent and fraudulent misrepresentations of Colonial and Owsley, they executed a mortgage on May 2, 1988.

The Davies further alleged that Colonial and Owsley allowed Owsley to withdraw various sums from the construction loan account, verifying that the project met certain percentages of completion, when in fact the project had not been inspected and was not completed. On July 20, 1988, Owsley was allowed to withdraw the remaining funds from the construction loan account. The inspection stated that the project was 100% completed, when in fact the construction was neither inspected nor completed. The Davies further alleged that Colonial and Owsley knew or had reason to know that Owsley was supposed to execute the construction loan. The counterclaim and cross-claim further alleged that Colonial and Owsley knew or had reason to know that the project was not 100% complete by July 20, 1988. Notwithstanding that knowledge, Colonial and Owsley allowed the withdrawal of all the construction loan proceeds, which the Davies allege operated to their detriment. In a letter dated November 9, 1988 to the Davies regarding the closing of the loan, Colonial's Senior Vice President Michael R. Bosley wrote, "... I would be willing to close the loan and withhold a reasonable amount of funds out of the closing until those items [which were not yet finished] are completed." The Davies claimed that this statement constitutes a negligent and fraudulent misrepresentation because Colonial knew that all the construction loan proceeds had previously

been withdrawn by Owsley with Colonial's consent.

The Davies further alleged that Colonial, Owsley, and the appraisers they hired made negligent and fraudulent misrepresentations to the Davies regarding the value of the home and the land, stating the value to be at least $315,000.00 when the value was substantially less. The Davies alleged that Colonial and Owsley made negligent and fraudulent misrepresentations regarding the terms of the note, terms of the contract for sale of real estate, terms of the mortgage, the appraisal, and various other matters. The Davies alleged that Owsley promised to pay a $15,000.00 note which the Davies had executed in favor of the First National Bank of Liberal and that Owsley is in default on this obligation. The Davies alleged that Colonial and Owsley have breached their agreements with the Davies in that they have failed and refused to obtain proper releases of prior mortgages and have failed and refused to grant the Davies free and clear title to the property involved herein. The Davies asserted that they have requested the closing of this transaction and that Colonial and Owsley have breached the terms of the contract for sale of real estate by failing and refusing to close the transaction and by failing and refusing to provide clear title.

The Davies asserted that Owsley has breached various specific terms in the contract for sale of real estate by failing to purchase their home at 650 Lilac, by failing to construct the new home in a workmanlike manner, and by failing to pay the interest on the loan. The Davies asserted various defects in the home which Owsley has failed to correct. The Davies asserted that Colonial has breached its obligations to the Davies by its participation in the negligent and fraudulent misrepresentations previously alleged and by allowing the withdrawal of all construction loan proceeds notwithstanding Colonial's knowledge that the construction was not completed in a workmanlike manner, was not inspected, and was not timely completed. The Davies prayed for cancellation and rescission of the note, mortgage, and contract for sale and for actual and punitive damages from RTC. Doc. 6.

RTC replied to the counterclaim with general denials. Doc. 9. The Owsleys answered the cross-claim and raised a cross-claim against the Davies. Doc. 10. Specifically, the Owsleys denied that they promised to join the Davies' note. The Owsleys admitted that they have not paid the interest on the note. They admitted knowing that the work was not completed after the date of the last loan draw, but denied that it was detrimental to the Davies. The Owsleys admitted agreeing to take the Davies' lots and its indebtedness as a credit at closing, but alleged that the Davies' refusal to close is the reason the transaction never occurred. The Owsleys alleged that the Davies' refusal to pay the required funds at closing has resulted in the Owsleys being unable to provide the releases of the prior mortgages on the property. The Owsleys admitted that they have not purchased the Davies' property at 650 Lilac at closing, but alleged that the Davies' refusal to close is the reason the transaction failed to occur. The Owsleys prayed for damages based on the Davies' breach of contract. Doc. 10.

The Pretrial Order, Doc. 58, which supersedes the prior pleadings and controls the course of this action, summarizes the various claims of the parties. RTC as Receiver for Colonial brought this action on a promissory note against the Davies. RTC seeks judgment against the Davies individually and foreclosure of a mortgage conveyed by the Davies to Colonial. The Davies have asserted cross-claims against the Owsleys alleging negligent and fraudulent misrepresentations by the Owsleys in connection with a contract for the sale of the real property subject to foreclosure. The Davies also allege that Colonial made negligent and fraudulent misrepresentations to them in connection with the same transaction. Defendant Columbia Savings Association, F.A. claims an interest in the real property subject to foreclosure pursuant to a mortgage dated June 27, 1985, executed by the Owsleys. Columbia also claims an interest in the real property pursuant to a mortgage dated April 29, 1983, executed by the Owsleys and conveyed to Peoples National Bank of Liberal, Kansas. After this action was commenced, Peoples as-

signed its mortgage to Columbia and was thereafter dismissed from the action.

The parties have stipulated to a number of facts surrounding the appointment of RTC as Receiver for Colonial and the execution of the note and mortgage by the Davies. Doc. 58, at pp. 3–5. The mixed issues of law and fact remaining can be summarized as follows: whether the Davies are in default under the terms of the note and mortgage; whether any of the defenses alleged by the Davies may be asserted against the RTC; the relative priorities between the interests claimed by RTC and Columbia Savings; whether any of the alleged misrepresentations by Colonial constitute a breach of Colonial's obligations and if so, whether this relieves the Davies of their obligations to perform; whether any of the alleged breaches and misrepresentations by Larry Owsley may be asserted against RTC; whether Colonial was bound by the contract for sale executed regarding the subject real estate; whether the Davies breached their obligations to the Owsleys by failing or refusing to close the transaction; whether the Davies wrongfully took and maintained occupancy of the real estate; whether the Davies' alleged breaches relieve Owsley of his obligations; whether any negligent or fraudulent misrepresentations were made by Owsley or Colonial; and what amounts of damages, if any, are to be awarded. Pretrial Order, Doc. 58, at pp. 5–7.

The issues of fact remaining may be summarized as follows: whether Colonial misrepresented the value of the real estate and improvements or the nature of any appraisal; whether Colonial represented that Owsley would jointly execute the Davies note; whether Colonial represented that it would monitor the progress of the construction and make disbursements of loan proceeds only according to such progress; whether Owsley made certain alleged misrepresentations; and whether Owsley breached various obligations. Pretrial Order, Doc. 58, at pp. 7–8.

The plaintiff's contentions, as contained in the pretrial order, are as follows. RTC contends that the Davies are in default of their obligations under the note and mortgage by their failure to make timely payments. RTC contends that their default entitles it to ac-celerate the entire amount due, to obtain judgment on the note, and to foreclose its mortgage. RTC asserts that the Davies' defenses based on alleged negligent and/or fraudulent misrepresentations may not be asserted against it under the terms of 12 U.S.C. § 1823(e), 12 U.S.C. § 1441a and the *D'Oench* doctrine. RTC contends that Columbia Savings claims a competing interest in the real property securing RTC's mortgage and that the Court must determine the validity and priority of the competing interests. Pretrial Order, Doc. 58, at p. 8.

The Davies' contentions, as they pertain to Colonial and RTC, are as follows. The Davies contend that their signatures on the note and mortgage were obtained as a result of negligent and fraudulent misrepresentations by Owsley and Colonial, specifically: that the value of the subject real estate and improvements would be at least $315,000.00, when the actual value was substantially less; that the Davies' promissory note would be jointly executed by Owsley, when in fact it was not; that Colonial would monitor the progress of the construction and disburse loan proceeds according to such progress, when in fact Colonial did not; and that Colonial represented to the Davies that it would "close the loan and withhold a reasonable amount of funds out of the closing" until certain unfinished construction items were completed, when in fact Colonial had already disbursed 100% of the construction loan proceeds. The Davies allege various breaches of contract by Owsley. The Davies also allege that Colonial breached its obligations to them by participating in the above-mentioned misrepresentations and by allowing Owsley to withdraw all loan proceeds despite the fact that construction was not completed. The Davies contend that the alleged misrepresentations and breaches relieve them of their obligations to perform, that they are therefore not in default, and that they are entitled to cancellation and rescission of the note, mortgage and the contract of sale. The Davies also claim entitlement to actual and punitive damages. Doc. 58, at pp. 9–11.

The court shall not summarize the Owsleys' contentions as those claims are not the subject of any pending motions for summary

judgment. Columbia Savings contends that its interests in the subject property are prior and superior to the interests of RTC and all other parties. Doc. 58, at p. 12.

With this rather lengthy background set forth, the court turns to the motion for summary judgment filed by RTC. The court is familiar with the standards governing the consideration of a motion for summary judgment. The Federal Rules of Civil Procedure provide that summary judgment is appropriate when the documentary evidence filed with the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■ The burden at the summary judgment stage is similar to the burden of proof at trial. The court must enter summary judgment, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact on its claim. Rule 56, however, imposes no requirement on the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323, 106 S.Ct. at 2553 (emphasis in original). Once the moving party has properly supported its motion for summary judgment, the nonmoving party may not rest upon mere allegations or denials contained in the nonmoving party's pleadings, but must

set forth specific facts showing a genuine issue for trial, relying upon the types of evidentiary materials contemplated by Rule 56. Fed.R.Civ.P. 56(e). Each party must demonstrate to the court the existence of contested facts on each claim it will have to prove at trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden the party will face at trial on the particular claim. *Anderson,* 477 U.S. at 254, 106 S.Ct. at 2513.

■ At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are functions of the finder of fact, not the functions of the judge when ruling on a motion for summary judgment. The evidence of the nonmoving party is to be believed. All justifiable inferences are to be drawn in favor of the nonmovant. *Id.* at 255, 106 S.Ct. at 2513–14.

The uncontroverted facts are as follows.

1. On April 18, 1988, the Davies as buyers and the Owsleys as sellers executed a Contract for Sale of Real Estate whereby the Davies agreed to pay $315,000.00 for the following described real property located in Seward County, Kansas:

> The North 11.98 feet of Lot 7, all of Lot 8, and the South 33.02 feet of Lot 9, Block 11, Plat No. 5, Country Club Acres Subdivision to the City of Liberal, Seward County, Kansas.

The Davies admit that this statement of fact is uncontroverted, but have added, "Even though the Davies were not owners of the land and Colonial Savings knew that from their own records and title report, the Davies did, in fact, sign the contract for sale of real estate." The court does not perceive how this allegation is material, for it should go without saying that the Davies were not the owners of the land prior to the execution of a contract whereby they agreed to purchase it.

The statement of fact as set forth by RTC is uncontroverted.

2. Under the terms of the Contract for Sale of Real Estate, the Davies were required to apply for a loan from Colonial for approximately $252,000.00 in order to fund the construction of a single family residence on the real estate.

3. On May 2, 1988, the Davies executed and delivered to Colonial their promissory note ("Note") in the principal sum of $252,-000.00 with interest accruing on the unpaid principal amount at the rate of 11% per annum.

4. To secure payment of this Note, the Davies, as mortgagors, executed and delivered to Colonial, as mortgagee, their Construction Mortgage, Assignment of Rents and Security Agreement ("Mortgage") dated May 2, 1988, encumbering the real property described above in paragraph 1. The Davies admit that this statement of fact is uncontroverted, but have added, "Even though from the records of Colonial Savings and the title insurance commitment dated April 28, 1988, in Colonial's possession, Colonial Savings did have the Davies sign a promissory note and mortgage." The court fails to comprehend the meaning of this allegation. The statement of fact as set forth by RTC is uncontroverted.

5. The Mortgage was recorded in the office of the Register of Deeds of Seward County, Kansas, on May 3, 1988 in Volume 392 beginning at page 736. All mortgage registration fees and recording fees were paid on the date of recording.

6. The Davies contend that they were induced to sign the Note and Mortgage based on the following alleged oral misrepresentations made by Larry Owsley and representatives of Colonial:

a. The value of the subject real estate and improvements thereon would be at least $315,000.00;

b. The promissory note executed by the Davies would be jointly executed by Larry Owsley;

c. Colonial would monitor the progress of the construction of the improvements and disburse loan proceeds according to such progress;

d. Colonial would close the loan and withhold a reasonable amount of funds out of the closing until certain unfinished construction items were completed.

7. On March 1, 1989, the Commissioner of the Kansas Savings and Loan Department declared Colonial insolvent and approved the appointment of the Federal Savings and Loan Insurance Corporation ("FSLIC") as Conservator of Colonial.

8. The Federal Home Loan Bank Board ("FHLBB") appointed FSLIC as Conservator of Colonial.

9. Pursuant to the management agreement between FHLBB, FSLIC and the Federal Deposit Insurance Corporation ("FDIC"), FDIC accepted responsibility as the managing agent for the Colonial conservatorship.

10. Pursuant to Section 501(b)(6) of the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA") of 1989, signed into law on August 9, 1989, RTC is mandated to succeed FSLIC in any institution in which FSLIC had been acting as conservator or receiver since January 1, 1989. Accordingly, RTC replaced FSLIC as Conservator of Colonial.

11. On September 21, 1989, the Office of Thrift Supervision, pursuant to Section 5(d)(2)(F) of the Home Owners' Loan Act of 1933, as amended by Section 301 of FIRREA, issued Order No. 89–213, which ordered RTC as Conservator of Colonial replaced with RTC as Receiver for Colonial. As Receiver, RTC is charged with responsibility for liquidating and winding up the affairs of Colonial.

12. The Davies have failed to pay the principal and interest when due on the Note and therefore the Note and Mortgage are in default. Due to the default, RTC, in its capacity as Receiver for Colonial, has elected to declare the entire principal balance and all accrued interest due and payable. To this statement of fact, the Davies have responded that it is uncontroverted that the Davies have not paid any principal and interest on the note and mortgage. The Davies assert that

they are not in default by reason of the alleged fraud committed by Colonial and Owsley. The Davies further assert that they were never obligated on the note and that the note is void. The court will address the Davies' legal arguments in this opinion.

13. The balance owed on the Note is $252,000.00 plus interest at the rate of 11% per annum from and after May 2, 1988, plus any late charges and any other sums advanced by RTC or Colonial under the terms of the Mortgage. The Davies do not controvert that the note is for $252,000.00 plus interest at the rate of 11%. The Davies dispute whether they owe that balance. Whether the Davies' defenses and counterclaims excuse them from performance is a matter to be addressed by the court herein.

14. The house described by the Contract of Sale of Real Estate was completed. The Davies moved into the house in the fall of 1991. The Davies admit that they moved in to the house in the fall of 1991. The Davies assert that the house was never completed. The Davies have failed to refer the court to any deposition testimony or other discovery materials which would support this allegation. Therefore, the statement of fact as set forth by RTC is uncontroverted.

15. William T. Davies continues to live in the house. He has not paid any rent or loan payments to anyone for his period of occupancy of the completed house. The Davies do not controvert this statement of fact, but merely contend that Mr. Davies does not owe any amount of money for loan payments or rent.

The Davies have set forth additional uncontroverted facts, to which the RTC has responded. The following facts also appear to be uncontroverted for purposes of this motion, unless otherwise noted.

16. Colonial's records contained a commitment for title insurance report, dated April 28, 1988, indicating that Larry D. Owsley and E. Kay Owsley were the owners of the subject real property; and that the property was subject to a mortgage to Peoples National Bank in the original principal amount of $507,675.00, and a mortgage to Columbia Savings Association in the original principal amount of $1,700,000.00.

17. Colonial's records contain a document titled "Interim Financing Drawsheet" where 100% of the $252,000.00 loan was disbursed to persons other than the Davies, from May 2, 1988 to July 20, 1988, a period of 79 days.

18. Colonial's records contain a letter dated November 9, 1988, to William T. Davies from Michael Bosley, Vice President of Colonial, stating that he would be willing to close the loan and "withhold a reasonable amount of funds" out of the closing until certain items were completed.

19. The Davies contend that they were defrauded by Colonial and Owsley in that when they signed the note and mortgage on May 2, 1988, they were not told of the April 28, 1988 title opinion indicating two large mortgages, and that the property was not free of liens. The court notes here that this is a contention of the Davies, and not a statement of fact.

20. The Davies have contended fraud on the part of Colonial in that it knew Owsley could not borrow the money on his own because of the mortgages, as listed on the April 28, 1988 title opinion, but failed to tell the Davies. In response to this contention, the RTC has responded that the Davies have abandoned these specific contentions and did not include them in the Pretrial Conference Order. Pursuant to Fed.R.Civ.P. 16(e), the pretrial order supersedes the prior pleadings. A review of the pretrial order reflects that this specific allegation of fraud is not included therein among the Davies' contentions or in the issues remaining for trial.

21. The Davies contend that Colonial knew that the improvements were not 100% complete on July 20, 1988, a period of 79 days from May 2, 1988.

22. The Davies have set forth the following as a statement of uncontroverted fact. "Colonial knew that the house to be constructed was not of a value of $315,000.00 (in order to obtain an 80% loan of $252,000.00). (See real estate appraisal by John Malin for $204,000.00 attached—this appraisal was conducted by John Malin at the request of R.T.C., and paid for by R.T.C.)." Doc. 73,

¶ 7. The appraisal referred to is dated January 29, 1990 and was conducted for RTC after RTC's appointment as Receiver of Colonial. The appraisal relied upon is not from the relevant time frame and therefore does not support the Davies' allegation regarding what Colonial knew about the value of the improvements to be constructed by Owsley. This so-called statement of fact is in reality an unsupported allegation. As RTC has set forth in its reply, Colonial employee Janice Courtney testified that at the time of the execution of the note and mortgage, Colonial relied on a $315,000.00 appraisal in its possession at that time. Doc. 80, Exh. A.

23. On July 20, 1988 (79 days after May 2, 1988, the date of the signing of the note and mortgage), the home construction was not over 25% complete.

24. The Davies have contended from the time of the filing of their original answer that there was fraud, lack of consideration, breach of contract, negligent misrepresentations, and fraudulent misrepresentations. The RTC has again responded that only those contentions contained in the pretrial order have any relevance to the determination of this case. A review of the pretrial order discloses that the Davies have not raised the claim of lack of consideration.

■ RTC seeks judgment on the Davies' promissory note and foreclosure of the mortgage. RTC also seeks judgment in its favor on the counterclaims and defenses of the Davies. RTC argues, inter alia, that the Davies are barred by federal statute from raising the affirmative defense of fraud in the inducement and from bringing a counterclaim based on fraud. RTC relies on 12 U.S.C. § 1823(e), which provides:

> **Agreements against interests of Corporation.** No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 11, either as security for a loan or by purchase or as receiver of any insured depository institution shall be valid against the Corporation unless such agreement—
>
> (1) is in writing,

> (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
>
> (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
>
> (4) has been, continuously, from the time of its execution, an official record of the depository institution.

This provision invalidates all oral agreements, and those written agreements not otherwise in compliance with the statutory requirements, to the extent such agreements might be used to impair the rights, title, or interest of the FDIC in the assets it has acquired from an insolvent bank. The result is the same when the RTC is the receiver because FIRREA gives the RTC the same rights under § 1823 as the FDIC. 12 U.S.C. § 1441a(b)(4)(A).

The Supreme Court unanimously held that § 1823(e) bars a defendant from raising the defense of fraud in the inducement when the FDIC, acting as receiver for the depository institution, seeks to collect on a promissory note, unless the allegedly fraudulent statement complies with the four requirements of § 1823(e). *Langley v. FDIC,* 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987). The Supreme Court rejected the argument that the word "agreement" as used in the statute encompasses only express promises to perform an act in the future. *Id.* at 90–93, 108 S.Ct. at 400–02. The Supreme Court also held that neither fraud in the inducement nor knowledge of the asserted defense by the FDIC was relevant to the application of section 1823(e). *Id.* at 93–96, 108 S.Ct. at 402–03.

In *FDIC v. Bell,* 892 F.2d 64 (10th Cir. 1989), *cert. dismissed,* 496 U.S. 913, 110 S.Ct. 2607, 110 L.Ed.2d 286 (1990), the Tenth Circuit extended the holding of *Langley* to a counterclaim of fraud by omission. The court held that section 1823(e) barred claims based on both overt misrepresentations as well as deceitful omissions. *Id.* at 66. Thus,

whether the Davies raise either a counterclaim or a defense based on either overt misrepresentations or failure to disclose material fact—i.e., fraud by omission—it is barred by *Langley*.

The Davies assert that their claims and defenses do not fit within the category of matters barred by the statute and the *D'Oench* doctrine. The Davies have set forth their claims and defenses in a variety of ways in their various pleadings. In their brief in response to the motion for summary judgment, the Davies make the following assertions: (1) Fraudulent misrepresentations regarding the value of the real estate; (2) Fraud and negligence in that Colonial knew the property was not free of liens; (3) Fraud and negligence in that Colonial promised that Owsley would sign the note; (4) Fraud and negligence in that Colonial allowed Owsley to withdraw the entire loan amount prior to completion of construction; (5) Fraud and negligence in that Colonial knew that the house was not 100% complete when the loan proceeds were exhausted; (6) Fraud and negligence in Vice President Michael Bosley's letter promising to withhold a sum of money from closing until certain items were completed, when the loan funds were already completely paid out; (7) Fraud and negligence in that Colonial knew the Davies were not the owners of the property when Colonial required the Davies to sign the note and mortgage; (8) Fraud and negligence in that Colonial failed to obtain releases of the two prior mortgages; (9) Claims of fraud against Owsley; (10) Failure of consideration in that the Davies did not receive clear title. Doc. 73, pp. 2–4. Each claim or defense asserted by the Davies is based upon an alleged misrepresentation of fact, nondisclosure or omission of fact, or a promise of future action which induced the Davies to enter into the transaction at issue here.

The Davies have asserted that their signatures were procured by a variety of misrepresentations. For the most part, the Davies have not referred to this claim as a claim for "fraud in the inducement." Regardless of what the Davies call it, their claim that their signatures were fraudulently procured by Colonial's misrepresentations is a claim for fraud in the inducement. This type of claim is barred by section 1823(e) as interpreted by the Supreme Court in *Langley*.

In the uncontroverted fact section of their brief, the Davies assert fraud by omission in: Colonial's failure to tell them of the title opinion which reflected two prior mortgages on the property; Colonial's failure to tell them that Owsley could not borrow the money on his own because of the prior mortgages; Colonial's knowledge that the house to be constructed was not of a value of $315,000.00. These claims and defenses of fraud by omission are likewise barred by section 1823(e) as interpreted by the Tenth Circuit in *Bell*.

Contrary to the Davies' assertions, their breach of contract claims against Colonial are not based on the written documents involved in this transaction. The contract claims are based on alleged oral agreements or written representations, neither of which meet the statutory requirements of section 1823(e). For example, any agreement or promise that Owsley would sign the loan does not appear in a writing executed by Colonial, approved by Colonial's board of directors, and maintained in Colonial's records. Likewise, any promise by Colonial to obtain releases of the prior mortgages and cause Owsley to convey clear title, is not in writing and is barred by the statute. The written agreements did not require Colonial to seek the Davies' approval before disbursing the loan proceeds to the contractor or subcontractors. Colonial made no written promise to monitor or approve the construction or see that the funds were properly disbursed. The note provides that the loan proceeds are to be disbursed to pay the contractor or subcontractors for the improvements to the property. Note, ¶ 13. The note specifically provides that Colonial's actions in disbursing loan proceeds, even if accompanied by an inspection, would not constitute an approval by Colonial of the work performed or the fitness of the construction. Note, ¶ 15. If Colonial made oral representations to monitor and approve the construction, any claim based thereon is likewise barred by section 1823(e).

The Davies' brief also contains a discussion of the following additional matters: fraud in factum, duress, fraudulent inducement that

does not take the form of an agreement, failure of consideration for the note, and that RTC is not a holder in due course. The court shall briefly address these matters.

A recurring theme in the Davies' pleadings is their claim that they did not receive title to and did not own the real estate which Colonial had them mortgage in return for the loan. The Davies claim that Colonial never received a valid mortgage because the Davies did not have clear title to the property to mortgage it to Colonial. The Davies further argue that RTC could determine from Colonial's records that the Davies did not have clear title to the land and that the mortgage and note were therefore void.

The Davies' claim regarding lack of title to the property is specious. RTC has provided the court with a copy of the warranty deed which granted the Davies title to the property. On May 2, 1988, the same day that the Davies executed the Note and Mortgage, they received a warranty deed from Land Acquisitions, Inc. (by Larry D. Owsley, President) granting them title to the subject real estate. The deed was recorded with the Seward County Register of Deeds on May 3, 1988 at Book 392, Page 735. The Davies' argument that they did not own sufficient title to the real estate to grant a valid mortgage is completely without support in the record. The Davies obtained title to the property and thus could legally execute a mortgage on this property.

Likewise, the related claim of lack of consideration for the note must fail. The Davies rely on *FDIC v. Leach,* 772 F.2d 1262 (6th Cir.1985) for the proposition that section 1823(e) does not bar a defense of failure of consideration. Assuming that this defense has not been waived by failure to raise it in the pretrial order, and further assuming that this defense is not barred by section 1823(e), it is unsupported by the factual record in this case. The Davies plainly received consideration for the note. In consideration for executing the note and mortgage and making the promise to repay the loan, the Davies received title to the property and the new residence constructed thereon.

█ The Davies attempt to assert a defense of fraud in the factum. Fraud in the factum is that type of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents. The defense of fraud in the factum may not be barred by section 1823(e). *See Langley,* 484 U.S. at 93, 108 S.Ct. at 402. Fraud in the factum is not raised in any of the prior pleadings, including the pretrial order. To the extent that this defense has not been waived by the failure to raise it earlier, the defense is unsuccessful on the factual record before the court. The Davies rely on *FDIC v. R–C Marketing and Leasing, Inc.,* 714 F.Supp. 1535 (D.Minn.1989). In *R–C Marketing,* the court stated that the defense of fraud in the factum required excusable ignorance of the contents of the writing signed. "The party must not only have been in ignorance, but must also have had no reasonable opportunity to obtain knowledge." *Id.* at 1542 (quoting *FDIC v. Culver,* 640 F.Supp. 725, 729 (D.Kan.1986)). The Davies have not alleged that they were ignorant of the contents of the documents they executed or that they had no reasonable opportunity to ascertain what they were signing. To the contrary, the Davies have admitted to signing the note and mortgage and have stipulated to the terms thereof. The Davies have made only the barest allegation of fraud in the factum without any evidentiary support. Their allegations amount to a claim of fraud in the inducement.

█ Regarding their claim of fraud in the inducement, the Davies argue that, since the fraudulent inducement did not take the form of an agreement, section 1823(e) is inapplicable. The Davies rely on *FDIC v. Galloway,* 613 F.Supp. 1392, 1403 (D.Kan.1985). However, the district court's decision in *Galloway* was reversed by the Tenth Circuit based on the intervening Supreme Court decision in *Langley. FDIC v. Galloway,* 856 F.2d 112, 114–15 (10th Cir.1988). The Davies' argument that section 1823(e) applies only to "agreements" was rejected by the Supreme Court in *Langley v. FDIC,* 484 U.S. at 90–93, 108 S.Ct. at 400–02. The misrepresentations need not take the form of agreements in order to be barred by section 1823(e).

In making the allegation of duress, the Davies rely on *FDIC v. Linn,* 671 F.Supp. 547 (N.D.Ill.1987). In *Linn,* the district court discussed the requirements of a claim of economic duress under Illinois law. The defense of duress is established when one is induced by the wrongful act of another to make a contract under circumstances which deprive the person of the exercise of free will. *Id.* at 556. Assuming that such a defense is available against the RTC, the Davies' bare allegations of duress are insufficient to defeat the RTC's claim. The claim of duress has not been raised in any of the pleadings, including the pretrial order. Further, there is no evidentiary support in the record for any claim of duress.

 The Davies also assert that RTC does not qualify as a holder in due course under Kansas statute or federal common law. The court finds that RTC qualifies as holder in due course under federal common law even if RTC cannot qualify as a holder in due course under the Kansas Uniform Commercial Code. *See FDIC v. Vestring,* 620 F.Supp. 1271, 1273 (D.Kan.1985) (FDIC holder in due course under federal common law when it acquires note in good faith, for value, and without actual knowledge of any defenses against the note). Since RTC is a holder in due course, RTC takes the instrument free of all defenses except: infancy; incapacity; duress, or illegality; fraud in the factum; discharge in insolvency proceedings; or any other discharge of which the holder has notice when he takes the instrument. K.S.A. 84–3–305 (1983). None of these defenses have a factual basis in the present case.

If RTC did not qualify as a holder in due course, the instrument would be subject to: all contract defenses; want or failure of consideration, nonperformance of condition precedent, nondelivery, or delivery for a special purpose; theft of the instrument, or that payment or satisfaction would be inconsistent with the terms of a restrictive endorsement. K.S.A. 84–3–306 (1983). The Davies have no evidentiary support for any of these defenses. Therefore, even assuming that RTC is not a holder in due course, the Davies' asserted defenses are insufficient to defeat the RTC's claim.

Given this resolution, the court need not address RTC's remaining arguments.

The cross-claims between the Davies and the Owsleys appear to be the only matters remaining which would require trial. The cross-claims between the Davies and the Owsleys come within the court's ancillary jurisdiction and therefore need not have independent grounds for subject matter jurisdiction. *See* 6 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1433 (2d ed. 1990). Since the Davies and the Owsleys are citizens and residents of Kansas and no federal question is presented, there is no independent basis for federal jurisdiction over the cross-claims. The assertion of ancillary jurisdiction is a discretionary matter. *Id.* § 1433, at 257. Since the only federal claim has been resolved, the court declines to exercise ancillary jurisdiction over the state law cross-claims. *Id.* at 259. The cross-claims shall be dismissed without prejudice. Those claims may be re-filed in state court within six months of the date of dismissal herein pursuant to K.S.A. 60–518. The court notes that the supplemental jurisdiction statute, 28 U.S.C. § 1367, is inapplicable here, since this case was filed prior to the statute's enactment on December 1, 1990. However, the statute would also support the dismissal of the cross-claims. *See* 28 U.S.C. § 1367(c).

This case is on the calendar for trial to the court commencing on June 14, 1993. It appears there are no factual issues remaining for trial. The issue of the relative priorities between RTC and Columbia Savings should be addressed by further briefing. Counsel for RTC shall prepare the appropriate journal entry once the priority issue has been resolved (by agreement or otherwise).

**IT IS BY THE COURT THEREFORE ORDERED** that RTC's motion for summary judgment against defendants and counter-claimants William T. Davies and Lisa M. Davies (Doc. 65) is hereby granted.

**IT IS FURTHER ORDERED** that the Davies' cross-claims against the Owsleys are hereby dismissed without prejudice.

**IT IS FURTHER ORDERED** that the Owsleys' cross-claims against the Davies are hereby dismissed without prejudice.