(589 P.2d 120)

No. 49,331

LESLIE MERREL, for himself and all others similarly situated, *Appellant,* v. RESEARCH & DATA, INC., *et al., Appellees.*

Opinion filed January 12, 1979.

*Steven Rupp* and *Fred W. Phelps,* of Fred W. Phelps, Chartered, of Topeka, for the appellant.

*Robert D. Hecht,* of Scott, Quinlan and Hecht, of Topeka, for the appellees.

Before FOTH, C.J., SPENCER and MEYER, JJ.

FOTH, C.J.: Defendants Research and Data, Inc., and its presi-

dent Leland W. Atteberry are in the business of collecting bad checks on behalf of merchants who engage their services. They endeavor to collect the face amount of the checks, plus a fee of $5.00 per check and ten percent of the face amount of those over $20.00. They do this in large part by writing letters threatening the makers with prosecution if the checks and fees are not paid. Upon collection defendants retain the fees as their compensation, remitting the face amount of the checks to the merchants.

In the summer of 1974 plaintiff wrote a number of insufficient fund checks to Topeka merchants. After receiving a series of defendants' letters plaintiff paid some of his bad checks and the corresponding fees to defendants, and then brought this action. His petition was originally framed as a class action in three counts: blackmail, outrage, and unjust enrichment. It sought punitive as well as actual damages. At a discovery conference, however, he dropped both tort claims, leaving only the claim of unjust enrichment as to the fees paid to and retained by defendants. On that claim the trial court rendered summary judgment for defendants, and plaintiff appeals.

The trial court's decision was based in large part on a finding that plaintiff had expressly contracted to pay the fees in question. The correctness of this finding is plaintiff's first point on appeal, and in our view is the controlling issue.

The trial court found as a matter of fact that "[i]n each of such merchants' business establishment[s] there was posted in a conspicuous place a sign indicating that a $5.00 charge would be made on all 'returned checks'." It concluded as a matter of law:

"Under the facts of this case, the merchants posted their sign announcing to the public that a charge of $5.00 would be made on returned checks. Plaintiff was not compelled to do business with these merchants nor was he compelled to pay by check. Further, and most importantly, he was not compelled to give the merchant, an unlawful, insufficient fund check. By doing so the Court finds that he accepted the merchants' terms as clearly stated in their posted notices thereby contracting to pay the charge set out."

Plaintiff challenges the finding and conclusion on the ground that there is a question of fact as to whether he agreed to the charges which cannot properly be resolved on summary judgment. He points to the absence of proof that he actually saw the signs and thereby assented to their terms.

The finding was based on a series of uncontradicted affidavits which had been duly served on plaintiff's counsel and filed in the

case. These affidavits, made by the defendant Atteberry and the managers of the various businesses which had accepted plaintiff's checks, stated that all the signs were so placed that a person cashing a check or giving a check for merchandise "could not help but see the sign." These assertions, made under oath, raised a presumption of fact that plaintiff saw the signs when he presented his checks. To overcome the logical inference to be drawn from the affidavits and thus raise an issue of material fact so as to preclude summary judgment plaintiff was required to present some rebutting evidence, such as a statement under oath that he did *not* see the signs. He could not, as he did, remain silent or rely on his pleadings. *Stovall v. Harms,* 214 Kan. 835, 838, 522 P.2d 353 (1974); *Ebert v. Mussett,* 214 Kan. 62, Syl. ¶ 3, 519 P.2d 687 (1974); *Meyer, Executor v. Benelli,* 197 Kan. 98, Syl. ¶ 1, 415 P.2d 415 (1966).

On the basis of defendants' uncontradicted affidavits the trial court was fully justified in finding that plaintiff, when giving the checks, agreed to the merchants' conditions and agreed to pay the specified fees upon dishonor.

In his second point plaintiff argues that he should recover the fees because they were paid under the coercion of defendants' threats to prosecute.

He offers no authority for the proposition that a debtor who pays a debt legally due can recover the amount paid because the payment was coerced. The authorities he does cite deal with the coerced settlement of an unliquidated or disputed claim; *e.g., Thompson v. Niggley,* 53 Kan. 664, 35 Pac. 290 (1894), where a mortgage was given under coercion to settle a tort claim; *Williamson v. Ackerman,* 77 Kan. 502, 94 Pac. 807 (1908), where a father gave a mortgage to settle an embezzlement claim against his son. In those cases it was held that the coercive effect of threats of prosecution, resulting in the creation of the obligation, was a good defense and made the obligation unenforceable. As the trial court noted, some doubt is cast on the proposition that the threat of prosecution is *per se* coercive by the decision in *Western Paving Co. v. Sifers,* 126 Kan. 460, 268 Pac. 803 (1928). We need not decide that question, however, and decide this case on the assumption that defendants' letters were coercive.

As previously discussed, the obligation here was already incurred and was liquidated before the coercion was applied; *i.e.,*

plaintiff had expressly contracted to pay the fees. Hence our only question is whether the threats voided the contract and required defendants to repay the amounts paid to satisfy it. We find no Kansas cases directly in point, but the general rule is set forth in the Restatement of Contracts § 495 (1932):

"Where the duress of one party induces another to enter into a transaction, the nature of which he knows or has reason to know, *and which he was under no duty to enter into,* the transaction is voidable against the former and all who stand in no better position, subject to the qualifications stated in § 499.
"*Comment:*
"*a. Duress inducing a person to perform his exact legal duty does not give him power to avoid his act;* but where a claim is unliquidated or the subject of an honest dispute, even a reasonable settlement induced by duress is voidable.

. . . .

"*Illustrations:*

. . . .

"*1. A has a claim against B for $100. The debt is liquidated and undisputed. By duress A coerces B to pay him the debt. The transaction cannot be avoided.*" (Emphasis added.)

Williston concurs:

"One who had misappropriated money or property, and who was, therefore, under a civil as well as criminal liability, made restitution. Under such circumstances, even though there was unquestionable duress, the debtor if compelled to pay the exact amount of a liquidated debt, cannot be allowed to recover the payment because in making the payment he has done no more than he was legally bound to do.
"The situation is legally different where the debtor is compelled to transfer property in satisfaction of his civil liability, or to pay a fixed sum to satisfy a claim of uncertain amount, from what it is where the payment exacted is the exact amount of a liquidated debt, since in the former case the parties are attempting an accord and satisfaction, not exactly fulfilling an existing obligation." 13 Williston on Contracts § 1615 (3d ed. 1970).

See also 70 C.J.S., Payment § 146; 66 Am. Jur. 2d, Restitution and Implied Contracts § 98.

The Kansas cases cited above apply that part of the rule which voids obligations incurred under coercion where the claim is unliquidated or disputed. The other side of the rule is applicable here; coercion affords no grounds for recovering payments made to satisfy a liquidated obligation or, as Williston puts it, "exactly fulfilling an existing obligation."

The reason for such a rule rests in the time honored doctrine of avoiding a multiplicity of suits. If in this case it were held that plaintiff could recover the fees paid because of the coercion, the

result would be an unpaid contractual obligation. In a lawsuit against him to collect the fees he would have no defense. Economy of the judicial system forbids such a result.

Plaintiff also contends that, because the underlying instrument was a negotiable instrument, he could in no event be liable for more than the face amount of the checks. The argument ignores the express contract to pay fees in case of dishonor, as discussed above.

It also ignores the import of K.S.A. 21-3707, our bad check law, which expressly authorizes the holder to write the maker of a bad check demanding the face amount plus a service charge of not more than $3.00. Failure of the maker to pay both the check and service charge raises a presumption that the check was given with intent to defraud. Two things may be said about the statute. First, it is a clear legislative recognition of a holder's right to recover more than the face amount of the check, even in the absence of a specific agreement—thus demolishing plaintiff's argument that the face amount is the maximum recoverable. Second, that statute is part of the criminal code, and contains nothing which by its terms or by implication limits the right of the parties to enter into a specific contract such as we have here. *Cf. State v. Haremza,* 213 Kan. 201, 515 P.2d 1217 (1973).

The trial court recognized that the fee contracted for might in some cases be so large as to be unconscionable, but found no element of unconscionability here. We agree. The fees charged seem quite modest just for the letter writing involved, not to mention the unexpected bookkeeping and inconvenience of having what was intended as a cash transaction involuntarily turned into the extension of credit. The fees were not even arguably unconscionable. *Cf. Wille v. Southwestern Bell Tel. Co.,* 219 Kan. 755, 757-60, 549 P.2d 903 (1976).

In summary, we hold that the trial court correctly found an express contract to pay the challenged fees, and that there were no factors which would relieve plaintiff of his obligation under the contract. Hence defendants were not unjustly enriched when plaintiff fulfilled that obligation, and the trial court properly rendered summary judgment for defendants. In view of our holding on those issues, we do not reach the question of whether plaintiff had unclean hands. Neither, of course, do we pass on the legality or propriety of defendants' conduct or their possible liability therefor in tort.

Affirmed.