RESOLUTION TRUST CORPORATION, as Conservator for Pioneer Federal Savings and Loan Association, Plaintiff,

v.

W.A. SCHONACHER, Jr. and Patricia Schonacher, Defendants.

Civ. A. No. 93–2233–GTV.

United States District Court, D. Kansas.

Feb. 17, 1994.

Robert L. Hamann, David M. Bax, Hamann, Holman, South; McCollum & Hansen, P.C., Prairie Village, KS, Tonya L. O'Hern, Lenexa, KS, for plaintiff.

Cynthia Clark Campbell, The Campbell Law Firm, Kansas City, MO, Susan Ellmaker, Overland Park, KS, Donald E. Bucher, J. Bryan Allee, Kansas City, MO, for defendants.

## MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

This case comes before the court on plaintiff's motion to dismiss defendants' affirmative defenses for lack of subject matter jurisdiction (Doc. 17). In its motion, plaintiff asserts that defendants' affirmative defenses must be dismissed based on various provisions of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA). Even if the FIRREA provisions are not violated, plaintiff contends that the defenses based on the Equal Credit Opportunity Act (ECOA) are barred by the *D'Oench* doctrine and 12 U.S.C. § 1823(e). For the reasons explained below, plaintiff's motion is granted in part and denied in part.

## I. Factual Background

On March 16, 1993, Pioneer Savings and Loan Association (Pioneer) filed this action on a loan guaranty against defendants in the District Court of Johnson County, Kansas. Resolution Trust Corporation (RTC) was appointed receiver for Pioneer and conservator for Pioneer's successor entity, Pioneer Federal Savings and Loan Association on April 2, 1993. On that same date, RTC as receiver transferred to RTC as conservator certain assets, including the loan guaranty which is the subject of the present action. On April 12, 1993, RTC mailed to defendants and other creditors of Pioneer notice of the receivership and the claim procedure imposed by the FIRREA. Subsequently, on May 6, 1993, the District Court of Johnson County, Kansas, issued an order substituting RTC as plaintiff in the state court action. On June 6, 1993, RTC removed the state court action to this court.

Defendants filed an answer on April 19, 1993, and an amended answer on October 22, 1993. In their amended answer, defendants assert various affirmative defenses, including lack of consideration, waiver, estoppel, failure to state a cause of action, failure to join a contingently necessary party, and violation by plaintiff of the Equal Credit Opportunity Act (ECOA).

RTC's motion seeks to dismiss defendants' affirmative defenses on the grounds that the court lacks subject matter jurisdiction because defendants failed to comply with FIRREA's mandatory administrative claim procedure. Even if the administrative exhaustion requirement is found inapplicable, RTC contends that other FIRREA provisions bar defendants' claims for equitable relief and recoupment or set-off. Finally, RTC argues that defendants' ECOA defenses and claim for recoupment or set-off are barred by the doctrine set forth in *D'Oench, Duhme and Company v. Federal Deposit Ins. Corp.*, 315

U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) and by 12 U.S.C. § 1823(e).

Defendants contend that their affirmative defenses are not "claims" subject to the administrative exhaustion requirements of FIRREA. In the event that the defenses are found to be claims, defendants argue that the FIRREA administrative claims procedure is not mandatory with respect to lawsuits filed prior to RTC receivership. Finally, defendants argue that *D'Oench* and 12 U.S.C. § 1823(e) are inapplicable in this case since the affirmative defenses are not dependent on unwritten agreements between the parties.

## II. Legal Standards

■■■ Although plaintiff styled its motion as a motion to dismiss, it should more properly have been brought as a motion to strike. Rule 12(f) of the Federal Rules of Civil Procedure provides that "the court may order stricken from any pleading any insufficient defense." A defense is insufficient if, as a matter of law, it cannot succeed under any circumstances. *See In re Sunrise Sec. Litig.,* 818 F.Supp. 830, 840 (E.D.Pa.1993); *Federal Deposit Ins. Corp. v. Isham,* 782 F.Supp. 524, 530 (D.Colo.1992). The purpose of the rule is to minimize delay, prejudice, and confusion by narrowing the issues for discovery and trial. *See Resolution Trust Corp. v. Scaletty,* 810 F.Supp. 1505, 1515 (D.Kan.1992).

## III. Discussion

RTC argues that this court lacks subject matter jurisdiction to adjudicate any of defendants' affirmative defenses. Specifically, RTC contends that defendants should have exhausted their administrative remedies under 12 U.S.C. § 1821(d) prior to asserting the defenses in court.

Section 1821(d)(13)(D) provides:

Limitation on judicial review. Except as otherwise provided in this subsection, no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D).[1]

This section was enacted as part of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA). FIRREA provides an administrative scheme for adjudicating claims against failed institutions for which RTC has become receiver. Under that scheme, RTC is given primary authority to determine claims asserted against failed financial institutions. 12 U.S.C. § 1821(d)(3). This includes the power to disallow "any claim by a creditor or claim of security, preference, or priority which is not proved to the satisfaction of" RTC. *See* 12 U.S.C. § 1821(d)(5)(D).

RTC, as receiver of a failed institution, must publish and mail to "creditor[s] shown on the institution's books," notice of the liquidation, providing at least 90 days for filing "claims." 12 U.S.C. § 1821(d)(3)(B) and (C). RTC must act on the claim within six months, and, if the claim is disallowed, the claimant may either seek an administrative review of that decision, file "a suit on such claim" in federal district court, or continue a judicial action commenced prior to the appointment of the receiver. 12 U.S.C. § 1821(d)(6). If, however, an administrative claim is not filed within the applicable time period, that claim "shall be disallowed and such disallowance shall be final." 12 U.S.C. § 1821(d)(5)(C)(i). FIRREA contains no section generally defining what constitutes a "claim" or "action" or who may be a "creditor" or "claimant."

The first question to be answered is whether the defendants complied with the

1. This section relates to the rights and duties of the Federal Deposit Insurance Corporation (FDIC). Another section of FIRREA, 12 U.S.C. § 1441a(b)(4), grants to RTC the same powers and rights to carry out its duties with respect to insured depository institutions as the FDIC has under Sections 2[11], 2[12], and 2[13], of the Federal Deposit Insurance Act, as amended, 12 U.S.C. §§ 1821, 1822, and 1823.

administrative claims requirement. It is undisputed that RTC complied with the notice requirement to defendants on April 12, 1993. RTC further contends that defendants have not availed themselves of the administrative claims procedure within the applicable filing period which expired on July 10, 1993. Defendants claim, however, that they complied with the FIRREA claims requirements by filing their first answer in this lawsuit on April 19, 1993. ·

Defendants acknowledge that this argument has been rejected by the Tenth Circuit in *Resolution Trust Corp. v. Mustang Partners*, 946 F.2d 103 (10th Cir.1991). In that case, the defendant argued that "because the suit was pending at the time RTC was named receiver, RTC-receiver had ample notice of [defendant's] counterclaims, and no further notice of [defendant's] claims was required." *Id.* at 106. In rejecting this argument, the court found no statutory provision that would exempt a creditor from adhering to the administrative claim procedure merely because a suit was filed pre-receivership. *Id.* Rather, the creditor must submit the claim to the RTC for administrative resolution first, and then may file suit or continue to pursue an already filed suit if the claim is disallowed. *Id.; see also Bruce J. Pierce & Assoc., Inc. v. Resolution Trust Corp.*, 987 F.2d 663, 664 (10th Cir.1993).

■ This court is not persuaded by defendants' argument that the administrative claims procedure should not be mandatory for claims brought via a lawsuit prior to receivership. This contention is simply not supported by any case law.[2] As a result, this court concludes that failure to comply with the administrative claims procedure can serve as a basis for dismissing claims brought against the RTC, even if those claims are part of a lawsuit instituted prior to receivership.

The next question to be resolved is whether defendants' affirmative defenses against RTC are "claims" or "actions" within the meaning of Section 1821(d)(13)(D). Courts are in unanimous agreement that Section 1821(d)(13)(D) establishes a mandatory administrative claim exhaustion requirement. *See Marquis v. Federal Deposit Ins. Corp.*, 965 F.2d 1148, 1151 (1st Cir.1992); *Office and Professional Employees Int'l Union, Local 2 v. Federal Deposit Ins. Corp.*, 962 F.2d 63, 64–65 (D.C.Cir.1992); *Meliezer v. Resolution Trust Corp.*, 952 F.2d 879, 882 (5th Cir.1992); *Resolution Trust Corp. v. Elman*, 949 F.2d 624, 627 (2d Cir.1991); *Praxis Properties, Inc. v. Colonial Sav. Bank*, 947 F.2d 49, 63 (3d Cir.1991); *Resolution Trust Corp. v. Mustang Partners*, 946 F.2d 103, 106 (10th Cir.1991); *Federal Deposit Ins. Corp. v. Shain, Schaffer & Rafanello*, 944 F.2d 129, 132 (3d Cir.1991); *Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 391 (3d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991). As a result, if the affirmative defenses are "claims" or "actions" encompassed by Section 1821(d)(13)(D), this court has no jurisdiction to hear them, and they must be stricken.

Courts are divided over whether the terms "claim" and "action" as described in this statute apply to affirmative defenses. Many courts have held that Section 1821(d)(13)(D) divests courts of jurisdiction over both counterclaims and affirmative defenses asserted in response to a complaint brought by RTC until the appropriate administrative remedies are exhausted. *See Federal Deposit Ins. Corp. v. Updike Bros., Inc.*, 814 F.Supp. 1035 (D.Wyo.1993); *Federal Sav. and Loan Ins. Corp. v. Shelton*, 789 F.Supp. 1367, 1371 (M.D.La.1992); *Federal Sav. and Loan Ins. Corp. v. McGinnis, Juban, Bevan, Mullins &*

---

2. To support their argument, defendants cite *Marc Development, Inc. v. Federal Deposit Ins. Corp.*, 771 F.Supp. 1163 (D.Utah 1991), *aff'd,* 992 F.2d 1503 (10th Cir.1993). The Tenth Circuit entered an order granting rehearing en banc of the panel opinion. The parties then entered into a settlement agreement, and the court concluded that the settlement rendered the appeal moot. As a result, the court vacated both its previously reported opinion as well as that of the district court. *See Marc Development, Inc. v. Federal Deposit Ins. Corp.*, 12 F.3d 948 (10th Cir.1993).

Despite defendants' contentions, *Marc Development* only concluded that courts would have continuing jurisdiction over suits filed prior to the appointment of a receiver while the administrative claim process is concluded. A claimant's right to continue its pending lawsuit is still dependent upon its compliance with those provisions. *Mustang Partners,* 946 F.2d at 106.

*Patterson, P.C.*, 808 F.Supp. 1263, 1280 (E.D.La.1992); *Resolution Trust Corp. v. Scaletty*, 810 F.Supp. 1505 (D.Kan.1992); *Resolution Trust Corp. v. Youngblood*, 807 F.Supp. 765, 768–69 (N.D.Ga.1992); *Talmo v. Federal Deposit Ins. Corp.*, 782 F.Supp. 1538, 1542 (S.D.Fla.1991). Other courts, however, have distinguished between counterclaims and affirmative defenses, and have exercised jurisdiction over affirmative defenses even though the proper administrative procedures had not yet been exhausted. *See Resolution Trust Corp. v. Midwest Fed. Sav. Bank*, 4 F.3d 1490, 1497 (9th Cir.1993); *Resolution Trust Corp. v. Conner*, 817 F.Supp. 98, 102 (W.D.Okla.1993); *Resolution Trust Corp. v. Ryan*, 801 F.Supp. 1545, 1555–56 (S.D.Miss.1992); *Federal Deposit Ins. Corp. v. Vernon Real Estate Investments, Ltd.*, 798 F.Supp. 1009, 1014 (S.D.N.Y.1992).

In *Federal Deposit Ins. Corp. v. Updike Bros., Inc.*, 814 F.Supp. 1035 (D.Wyo.1993), the court noted the broad language of Section 1821(d)(13)(D) which has led courts to "appl[y] the exhaustion requirement to an extensive variety of claims." *Id.* at 1039. The court concluded:

> In light of the unambiguous language mandating the exhaustion requirement and in light of Congress' express fear that the costs of litigation would exacerbate an already catastrophic situation, it is patently clear that the jurisdictional bar of section 1821(d)(13)(D) reaches all claims seeking payment from the assets of the affected institution, all claims seeking satisfaction from those assets, and all claims relating to any act or omission of either the institution or the receiver regardless of whether the action is framed as a claim, counterclaim, or affirmative defense. Therefore, we find that the various counterclaims and affirmative defenses asserted by the defendants in this case are "claims" subject to the exhaustion requirement mandated by FIRREA because they seek a determination of rights with respect to the assets of [the failed institution] and they relate to acts of both the institution and the receiver.

*Id.* at 1040 (citations omitted).

Relying on the *Updike* decision, the court in *Resolution Trust Corp. v. Tri–State Real-*

*ty Investors, Inc.*, 838 F.Supp. 1448 (D.Kan. 1993) held that affirmative defenses raised by a defendant against RTC were subject to the exhaustion requirement mandated by FIRREA. In that case, the court rejected the defendant's argument that the affirmative defenses should not be considered "claims" because they do not seek payment from the institution:

> All of the defendant's affirmative defenses address defects with the loan at its inception and could have been affirmatively asserted as lender liability claims for damages or as bars to recovery on the note. Defendant's claims are denominated as "affirmative defenses" merely because of the posture of the parties now that the RTC has sued defendant on the note. This does nothing to change the fact that defendant could have asserted these claims in its own action had it desired to do so. Because defendant failed to assert its claims attacking the validity of the note within the time constraints provided in FIRREA, the court finds that its claims, now denominated as affirmative defenses, are barred.

*Id.* at 1451.

Only one court of appeals has so far addressed this question. In *Resolution Trust Corp. v. Midwest Fed. Sav. Bank*, 4 F.3d 1490 (9th Cir.1993), the Ninth Circuit affirmed the district court's holding that it had subject matter jurisdiction over an affirmative defense of mutual mistake even though the defendant had not exhausted the administrative procedures established by FIRREA. *Id.* at 1497. The court restricted its holding to "affirmative defenses raised by a defendant who, prior to being sued by the RTC, was not a creditor of the RTC and who had no independent basis for filing a claim against the RTC." *Id.*

The *Midwest* court adopted the reasoning of, and quoted extensively from, the decision in *Resolution Trust Corp. v. Conner*, 817 F.Supp. 98 (W.D.Okla.1993). The district court in *Conner* first noted various rules of statutory construction, including its duty to use the statute's plain meaning when the language is clear and unambiguous, unless that literal interpretation would produce a

result inconsistent with the drafters' intentions or one that is patently absurd. *Id.* at 100. The court then determined that the statute is clear and unambiguous and concluded that the terms "claims" and "actions" were used in their ordinary legal sense and refer to causes of action rather than defenses. *Id.*

The *Conner* court then reviewed the other provisions of FIRREA as well as its policies and objectives and concludes that these other provisions reinforce the interpretation that the terms "claim" and "action" do not encompass defenses. The court specifically cites those provisions that require notice to be given only to creditors of the depository institution. *Id.* at 102 (citing 12 U.S.C. § 1821(d)(3)(B) and (C)). The court concludes that including affirmative defenses within the administrative exhaustion requirements

> would require parties such as Defendants who are not creditors of a failed depository institution and do not receive statutory notice of the requirement of and deadline for filing claims, and who have no independent basis for bringing an action against the RTC and against whom the RTC has not brought suit, to present to the RTC as receiver any potential defenses that they might have to any claims that the RTC as receiver or in its corporate capacity might one day assert against them, which are as yet unknown, and proof thereof.

*Id.*

■ Although different results were reached in the cases just described, they are not totally inconsistent in their reasoning. Distilling that reasoning and examining the statutory language and purposes, this court concludes that a two-step process is required to determine which counterclaims and affirmative defenses are subject to the mandatory administrative claims procedure.

The first step is to determine whether the claim embodied in the affirmative defense or counterclaim is of the type described in the statute. In *Rosa v. Resolution Trust Corp.,* 938 F.2d 383 (3d Cir.1991), the court under-

took to define claims for which the administrative claims procedure is mandated under clause (i) of Section 1821(d)(13)(D): "[T]he bar embodied in clause (i) reaches (1) claims for payment from the assets of [the failed institution], (2) actions for payment from those assets and (3) actions for a determination of rights with respect to those assets." *Rosa,* 938 F.2d at 393. Clause (ii) of that section reaches claims "relating to any act or omission of such institution or the Corporation as receiver." 12 U.S.C. 1821(d)(13)(D).

If the claim is of the type included in the statute's language, the next step is to determine whether the claim could have been brought independently by the defendant against the institution or the receiver. In making this evaluation, the determining factor is not whether a defendant labels his response as an affirmative defense or as a counterclaim. Instead, the court must evaluate whether an asserted defense or counterclaim could have been brought against the receiver or the institution independently. In other words, if a defendant, prior to being sued by the RTC, would have had no independent grounds for filing a claim based on his asserted defense against the RTC or the institution, then Section 1821(d)(13)(D) does not divest the district court of jurisdiction even though the defendant has not exhausted the FIRREA administrative claims procedure.

■ I hold that defenses are not subject to the administrative claims procedure unless they could have been asserted independently against the RTC or the institution, and reject the RTC's argument that all affirmative defenses come under the scope of Section 1821(d)(13)(D). Defendants' argument that only those defenses or counterclaims that assert a right to payment are subject to the FIRREA exhaustion requirement is also rejected.[3] The plain language of the statute shows that the administrative procedure was meant to encompass more than merely monetary claims. Section 1821(d)(13)(D) specifically divests courts of jurisdiction over "any

---

**3.** The following discussion shows that at least one of defendants' "affirmative defenses" argu- ably asserts a right to payment.

claim or action for payment from, *or any action seeking a determination with respect to, the assets* of any depository institution for which the Corporation has been appointed receiver...." 12 U.S.C. § 1821(d)(13)(D) (emphasis added).

■ With this background in mind, the affirmative defenses at issue in this case will be analyzed using the two-step approach. The affirmative defenses claimed by defendants can be summarized as follows:

1. The guaranty is void for want of consideration.

2. Plaintiff has failed to name and/or join all necessary parties.

3. Plaintiff's claim is barred under the doctrines of waiver and estoppel.

4. Plaintiff fails to state a claim upon which relief can be granted.

5. The institution violated the Equal Credit Opportunity Act (ECOA) in its dealings with defendant Patricia Schonacher. As a result, of this violation:

    a. Defendants are entitled to recoupment or set-off for damages suffered by Patricia Schonacher, including actual and punitive damages, reasonable attorney fees, and costs, totalling in excess of $50,000; and

    b. The guaranty is unenforceable against Patricia Schonacher because the ECOA violation makes such enforcement void as against public policy.

The claim for set-off or recoupment is clearly a claim for payment from the assets of the failed institution, and therefore falls within the scope of Section 1821(d)(13)(D).[4] In addition, each of the other defenses could fall within the specific language of the statute which provides that the court will not have jurisdiction over "any action seeking a determination of rights with respect to" the assets of any depository institution for which the RTC has been appointed receiver. 12 U.S.C.

1821(d)(13)(D). These affirmative defenses, which seek to limit or totally defeat the RTC's right to enforce the guaranty, seek a determination of rights with respect to assets of the depository institution.

Defendants attempt to avoid this conclusion by arguing that if plaintiff is found to have violated the ECOA, the guaranty, at least with respect to Patricia Schonacher, will be void ab initio and not merely voidable. As a result, if defendant is successful, the guaranty was never an asset of the institution, and therefore not within the statutory language. Defendants, however, have offered no support for the proposition that a violation of ECOA could yield such a result, and in fact other courts have concluded that such a violation would not render an instrument void.

The ECOA provides in pertinent part that, "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction ... on the basis of ... sex or marital status." 15 U.S.C. § 1691(a)(1). The Federal Reserve Board, pursuant to the ECOA, 15 U.S.C. § 1691b(a), has promulgated Regulation B, which provides: "[A] creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested." 12 C.F.R. § 202.7(d)(1).

The statute provides for recovery of actual and punitive damages, as well as costs and attorney fees. See 15 U.S.C. § 1691e(a), (b), and (d). The statute also provides for equitable and declaratory relief,[5] but courts interpreting that section have concluded that this language does not grant courts the power to invalidate underlying obligations. See *CMF Virginia Land, L.P. v. Brinson,* 806 F.Supp. 90, 95 (E.D.Va.1992) (The ECOA does not "afford relief by way of an affirmative de-

---

4. Although labelled as an affirmative defense, this should probably be characterized as a counterclaim. Under Fed.R.Civ.P. 13, recoupment affords the basis for a compulsory counterclaim and set-off for a permissive counterclaim.

5. 15 U.S.C. § 1691e(c) reads: "Upon application by an aggrieved applicant, the appropriate United States district court or any other court of competent jurisdiction may grant such equitable and declaratory relief as is necessary to enforce the requirements imposed under this title."

fense. A counterclaim certainly can be premised upon a violation of the ECOA, but such a violation cannot be alleged to avoid basic liability on the underlying debt."); *Diamond v. United Bank & Trust,* 776 F.Supp. 542, 544 (N.D.Okla.1991) ("[T]here is no authority, in statutory language or case law, for the proposition that a violation of the ECOA renders an instrument void."); *United States v. Joseph Hirsch Sportswear Co., Inc.,* 1989 WL 20604 (E.D.N.Y.1989), *aff'd,* 923 F.2d 842 (2d Cir.1990) ("The ECOA on its face provides only for a civil action in federal court for actual damages as a remedy.... It thus appears that the defendants may be entitled to employ the ECOA only to assert a counterclaim, not a defense."). This court concurs in this analysis and conclusion.

I conclude the allegations of ECOA violations fall within the scope of Section 1821(d)(13)(D). These claims could have been brought independently and prior to the action taken by the institution or the RTC. The defenses related to ECOA violations must be stricken.[6]

The court reaches the same conclusion with respect to the affirmative defense that the guaranty is void for want of consideration. This defense could have been affirmatively asserted by defendants in their own action had they desired to do so, and constitutes a claim that is subject to the administrative claims procedure. The defense of want of consideration is therefore stricken.

Defendants' other affirmative defenses, however, that the plaintiff has failed to name and/or join all necessary parties, that the plaintiff's claim is barred under the doctrines of waiver and estoppel, and that the plaintiff fails to state a claim upon which relief can be granted, are all brought in response to plaintiff's suit. These defenses have no independent bases, and the court concludes that they should not be stricken.

### IV. Conclusion

Defendants' affirmative defenses relating to the ECOA violations and want of consideration are stricken. The court finds that

these affirmative defenses are subject to the administrative claims procedure mandated by FIRREA, and the court therefore is without jurisdiction to hear them. Defendants' other affirmative defenses, however, do not fall within this category and will be allowed to stand.

Plaintiff has also argued that the ECOA violation defenses should be stricken based upon other FIRREA provisions and the *D'Oench* doctrine. In light of the court's conclusion that these defenses should be stricken, there is no need to address plaintiff's other arguments.

IT IS, THEREFORE, BY THE COURT ORDERED that plaintiff's motion to dismiss defendants' affirmative defenses for lack of subject matter jurisdiction (Doc. 17) is granted in part, as previously explained.

**IT IS SO ORDERED.**

---

**6.** Although not briefed by the parties, the court notes that it appears the two-year statute of limitations for bringing an ECOA claim, pursuant to

15 U.S.C. § 1691e(f), has expired. According to defendants' amended answer, the guaranty was executed on October 20, 1987.