## RESOLUTION TRUST CORPORATION, as Receiver for Pioneer Federal Savings and Loan Association, Plaintiff,

v.

## A.W. ASSOCIATES, INC., et al., Defendants.

Civ. A. No. 93–2195–GTV.

United States District Court, D. Kansas.

Nov. 4, 1994.

Robert L. Hamann, Hamann & South, P.C., Overland Park, KS, Timothy M. Henderson, Norton, Wasserman, Jones & Kelly, Salina, KS, Susan Ellmaker, Cynthia Clark Campbell, The Campbell Law Firm, Tonya L. O'Hern, The Wirken Group, P.C., Kansas City, MO, for Resolution Trust Corp.

J. Bryan Allee, Moore, Bucher & Morrison, Donald E. Bucher, Moore & Bucher, P.C., Kansas City, MO, for A.W. Associates Inc., James E. Pohrer, Fran L. Pohrer.

Michael D. Doering, McDowell, Rice & Smith, P.C., Overland Park, KS, Scott I. Asner, Law Office of Scott I. Asner, Olathe, KS, Justin J. Johl, McDowell, Rice & Smith, P.C., Kansas City, MO, for Sierra Corp. of Kansas.

Richard J. Lind, Johnson County Legal Dept., Olathe, KS, for Johnson County Bd. of County Com'rs.

Robert H. Gardner, Mission, KS, for Real Estate Dynamics Inc.

Robert L. Hamann, Hamann & South, P.C., Overland Park, KS, Timothy M. Henderson, Norton, Wasserman, Jones & Kelly, Salina, KS, Cynthia Clark Campbell, The Campbell Law Firm, Tonya L. O'Hern,

The Wirken Group, P.C., Kansas City, MO, for Federal Deposit Ins. Corp.

Richard L. Martin, Cynthia C. Dunham, Martin, Leigh & Laws, Richard D. Ralls, John W. McClelland, King, Burke, Hershey, Farchmin & Schlomann, Kansas City, MO, for Country Hill Bank.

VAN BEBBER, District Judge.

## MEMORANDUM AND ORDER

This case is before the court on the following motions:

Motion for Summary Judgment of Plaintiff Resolution Trust Corporation as Receiver for Pioneer Federal Savings and Loan Association (Doc. 91); and

Motion for Summary Judgment of Counterclaim Defendant Resolution Trust Corporation as Receiver for Pioneer Savings and Loan Association (Doc. 93).

For the reasons stated in this memorandum and order, both summary judgment motions are granted.

### I. Background

Pioneer Savings and Loan Association (Pioneer Savings) commenced this mortgage foreclosure action against defendants on December 8, 1992, in the District Court of Johnson County, Kansas. Defendants A.W. Associates, Inc., James E. Pohrer, and Fran Pohrer filed their joint answer and counterclaim against Pioneer Savings on March 1, 1993. On April 2, 1993, Resolution Trust Corporation (RTC) was appointed receiver for Pioneer Savings and conservator for Pioneer's successor entity, Pioneer Federal Savings and Loan Association (Pioneer Federal). On that same date, RTC as receiver for Pioneer Savings transferred to RTC as conservator for Pioneer Federal pursuant to a purchase and assumption agreement certain assets, including the notes and security documents that are the subject of the present action. RTC as conservator for Pioneer Federal was substituted as plaintiff in place of Pioneer Savings in the state court action. RTC as receiver for Pioneer Savings was substituted in place of Pioneer Savings in the counterclaim filed by the defendants in the

state court action. On May 13, 1993, the case was removed to this court. On March 10, 1994, Pioneer Federal was placed in receivership for the purposes of liquidation. RTC was named receiver of Pioneer Federal and was substituted as plaintiff in this action. On February 10, 1994, defendant Fran Pohrer died. On August 18, 1994, this court granted the motion to substitute Eric Rajala as administrator of the Estate of Fran Pohrer.

Plaintiff seeks foreclosure on two mortgages executed by James E. Pohrer and Associates, Inc., predecessor in interest to defendant A.W. Associates, Inc., based on its default on notes that the mortgages secured. Plaintiff also seeks judgment against defendants James E. Pohrer and Fran Pohrer, jointly and severally based on their personal guaranties of the two mortgages. Defendants assert several affirmative defenses and counterclaims in the suit.

The uncontroverted facts are as follows:

1. On August 27, 1985, James E. Pohrer and Associates, Inc., predecessor in interest to defendant A.W. Associates, Inc., executed and delivered to Pioneer Savings a note in the principal amount of $2,800,000. The note was secured by a mortgage on real property located in Johnson County, Kansas. The note was also secured by a personal guaranty executed by defendant James Pohrer.

2. On August 25, 1986, James E. Pohrer and Associates, Inc., predecessor in interest to defendant A.W. Associates, Inc., executed and delivered to Pioneer Savings a second note in the principal amount of $8,400,000. The second note was secured by a second mortgage on the real property located in Johnson County, Kansas. The second mortgage was subject to the first mortgage on the property. The second note was also secured by a personal guaranty executed by defendant James Pohrer.

3. On March 7, 1989, James Pohrer and Fran Pohrer executed a joint guaranty securing both the $2.8 million note and the $8.4 million note.

4. Additionally, the notes were secured by the following security documents: a security agreement dated August 15, 1986, a collateral assignment of leases and rents dated August 15, 1986, and an absolute assignment of rents dated January 25, 1991.

5. A.W. Associates, Inc. and the Pohrers have not entered into any written agreements with Pioneer Savings, aside from the notes, mortgages, renewals of the notes and mortgages, guaranties, and security documents described above.

6. Pioneer Savings sent notice of default on the notes to A.W. Associates, Inc. on October 19, 1992. A.W. Associates, Inc. received the notice on or about October 22, 1992. Subsequently, the plaintiff commenced the present foreclosure action in state court.

7. On or about May 28, 1993, attorneys for the defendants filed an administrative claim with RTC. The proof of claim stated that it was on behalf of A.W. Associates, Inc. The proof of claim form stated the claims against Pioneer Savings as follows:

Counterclaim on lawsuit by Pioneer alleging anticompetitive tying arrangements by Pioneer and affiliated institutions and business duress. See attached documents.

The counterclaim of defendants A.W. Associates, Inc., James E. Pohrer, and Fran Pohrer was attached to the proof of claim form.

8. On November 19, 1993, RTC notified A.W. Associates, Inc. that its administrative claim against Pioneer Savings was disallowed.

## II. Summary Judgment Standards

In deciding a motion for summary judgment, the court must examine any evidence tending to show triable issues in the light most favorable to the nonmoving party. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir. 1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). A moving party is entitled to summary judgment only if the evidence indicates "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine factual issue is one that "can reasonably be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

### III. Discussion

Plaintiff RTC seeks judgment against A.W. Associates, Inc. on the notes and seeks to foreclose on the mortgages. RTC also seeks to enforce the personal guaranties of the loans executed by James Pohrer and Fran Pohrer. Further, RTC requests summary judgment in its favor on the counterclaims brought by A.W. Associates, Inc. and the Pohrers.

RTC argues that the $2.8 million and the $8.4 million notes executed by A.W. Associates, Inc. are in default, thus triggering RTC's right to foreclose on the mortgages and enforce the other security documents. RTC also asserts its right to enforce the personal guaranties of James Pohrer and Fran Pohrer.

Defendants assert several affirmative defenses and counterclaims. First, Fran Pohrer (now the estate of Fran Pohrer, deceased) argues that the Equal Credit Opportunity Act (ECOA) bars enforcement of her personal guaranty. Defendants A.W. Associates, Inc. and the Pohrers assert that the balance plaintiff claims is due on the notes contains sums defendants do not owe, including a $500,000 developer's fee used to fund a down payment on property Pioneer Savings required Mr. Pohrer to purchase and a $140,-000 advance used for debt service and other expenses on other properties Pioneer Savings required Mr. Pohrer to purchase. Defendants argue that common law business coercion and duress bar plaintiff's full recovery on the amount claimed due on the notes. Defendants also assert that Pioneer Savings used an anti-competitive tying arrangement in violation of 12 U.S.C. § 1972. Further, defendants assert the affirmative defenses of waiver and estoppel, set-off, failure to state a claim and failure to join necessary parties.

RTC argues that this court lacks subject matter jurisdiction to adjudicate Fran Pohrer's ECOA claim. RTC also argues that it is a holder in due course of the notes executed by A.W. Associates, Inc. and thus takes free from any of the defendants' personal defenses. In the alternative, RTC argues that under the doctrine of *D'Oench, Duhme & Co. v. F.D.I.C.,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and 12 U.S.C. § 1823(e) defendants' affirmative defenses and counterclaims are barred.

### A. Equal Credit Opportunity Act

RTC argues that this court lacks subject matter jurisdiction to adjudicate Fran Pohrer's claim that Pioneer Savings & Loan Association violated the ECOA by requiring her to sign a personal guaranty of the A.W. Associates, Inc. debt. Specifically, RTC contends that Fran Pohrer should have exhausted her administrative remedies under 12 U.S.C. § 1821(d) prior to asserting the defense in this action. Section 1821(d)(13)(D) provides:

Limitation on judicial review. Except as otherwise provided in this subsection, no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D).[1]

This section was enacted as part of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA). FIRREA provides an administrative scheme for adjudicating claims against failed institutions for which RTC has become receiver. Under that scheme, RTC is given primary authority to determine claims asserted against failed financial institutions. 12 U.S.C. § 1821(d)(3). This includes the power to disallow "any claim by a creditor or claim of security, preference, or priority which is not proved to the satisfaction of" RTC. *See* 12 U.S.C. § 1821(d)(5)(D).

RTC, as receiver of a failed institution, must publish and mail to "creditor[s] shown on the institution's books," notice of the liquidation, providing at least 90 days for filing "claims." 12 U.S.C. § 1821(d)(3)(B) and (C). RTC must act on the claim within six months, and, if the claim is disallowed, the claimant may either seek an administrative review of that decision, file "a suit on such claim" in federal district court, or continue a judicial action commenced prior to the appointment of the receiver. 12 U.S.C. § 1821(d)(6). If, however, an administrative claim is not filed within the applicable time period, that claim "shall be disallowed and such disallowance shall be final." 12 U.S.C. § 1821(d)(5)(C)(i). FIRREA contains no section generally defining what constitutes a "claim" or "action" or who may be a "creditor" or "claimant."

In *R.T.C. v. Schonacher,* 844 F.Supp. 689 (D.Kan.1994), this court addressed in detail the issue of when affirmative defenses are defined as claims which must be first presented to the RTC through its administrative claims procedure before they can be entertained in a federal district court. This court concluded that an affirmative defense is a "claim" subject to the mandatory exhaustion requirement of section 1821(d)(13)(D) only if (1) the claim embodied in the affirmative defense is of the type described in sec-

tion 1821(d)(13)(D), and (2) the claim could have been brought independently by the defendant against the institution or receiver. *Id.* at 694. "In other words, if a defendant, prior to being sued by the RTC, would have had no independent grounds for filing a claim based on his asserted defense against the RTC or the institution, then Section 1821(d)(13)(D) does not divest the district court of jurisdiction even though the defendant has not exhausted the FIRREA administrative claims procedure." *Id.*

The ECOA provides in part that, "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of credit transaction ... on the basis of ... sex or marital status." 15 U.S.C. § 1691(a)(1). The Federal Reserve Board, pursuant to ECOA, 15 U.S.C. 1691b(a), has promulgated Regulation B, which provides: "[A] creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested." 12 C.F.R. § 202.7(d)(1).

The ECOA provides for recovery of actual and punitive damages in addition to costs and attorney fees. 15 U.S.C. § 1691e(a), (b), and (d). Although the statute provides for equitable and declaratory relief, this provision has been interpreted to preclude courts from invalidating underlying obligations. *See Schonacher,* 844 F.Supp. at 695–96 and cases cited therein.

This court has previously determined that allegations of ECOA violations fall within the scope of section 1821(d)(13)(D). *Id.* at 696. Based on that precedent the court concludes that it does not have jurisdiction to hear the claim, unless Fran Pohrer has complied with the administrative claims requirements under FIRREA.

The parties disagree as to whether an ECOA claim was filed by Fran Pohrer with the RTC. The defendants A.W. Associates,

---

1. This section relates to the rights and duties of the Federal Deposit Insurance Corporation (FDIC). Another section of FIRREA, 12 U.S.C. § 1441a(b)(4), grants to RTC the same powers and rights to carry out its duties with respect to insured depository institutions as the FDIC has under Sections 11, 12, and 13 of the Federal Deposit Insurance Act, as amended, 12 U.S.C. §§ 1821, 1822, and 1823.

Inc., James E. Pohrer and Fran Pohrer's counterclaim in this suit was attached to a preprinted proof of loss that was submitted to the RTC in a timely manner. The proof of loss form named A.W. Associates, Inc. as the claimant, without mention of James or Fran Pohrer. The counterclaim attached to the proof of loss alleges an anticompetitive tying arrangement and business coercion and duress, but fails to mention any allegation by Fran Pohrer of an ECOA violation by Pioneer Savings.

The court concludes that Fran Pohrer failed to comply with the administrative claim requirements. This court lacks jurisdiction under 12 U.S.C. 1821(d)(13)(D) to hear Fran Pohrer's allegations of ECOA violations by Pioneer Savings.

## B. Holder in Due Course Status

■ Plaintiff argues that it is a holder in due course of the A.W. Associates, Inc. notes and that this status allows RTC to take the instruments free of all personal defenses. If the RTC has holder in due course status, it takes the notes subject only to any "real" defenses the defendants have including: infancy, duress, lack of legal capacity, illegality, fraud in the factum, and discharge in insolvency proceedings. *See* K.S.A. § 84–3–305 (Supp.1993).

Under the Kansas Uniform Commercial Code (UCC), a holder in due course is a holder who takes an instrument for value, in good faith, without notice that it is overdue or has been dishonored or of any defense against or claim to the instrument. K.S.A. § 84–3–302(a)(2) (Supp.1993). The Kansas code provides an exception to holder in due course status:

(c) Except to the extent a transferor or predecessor in interest has rights as a holder in due course, a person does not acquire rights of a holder in due course of an instrument taken

(2) by purchase as part of a bulk transaction not in ordinary course of business of the transferor.

K.S.A. § 84–3–302(c)(2) (Supp.1993). The official UCC comment states that section 3–302(c)(2) would apply "to the purchase by one bank of a substantial part of the paper held by another bank which is threatened with insolvency and seeking to liquidate its assets." Courts have concluded that this section applies to the transfer of instruments to the FDIC (or RTC) pursuant to a purchase and assumption agreement and have determined that such a transaction is not "in the ordinary course" of the savings and loan's business. *Gunter v. Hutcheson*, 674 F.2d 862, 872 (11th Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982); *F.D.I.C. v. Galloway*, 613 F.Supp. 1392, 1397 (D.Kan.1985), *rev'd on other grounds*, 856 F.2d 112 (10th Cir.1988).

The notes in the present case were part of a bulk transfer of financial instruments pursuant to a purchase and assumption agreement from RTC as receiver for Pioneer Savings to RTC as conservator for Pioneer Savings' successor, Pioneer Federal. A transfer such as this is not in the ordinary course of business. *Galloway*, 613 F.Supp. at 1397; *see also R.T.C. v. Davies*, 824 F.Supp. 1002, 1013 (D.Kan.1993). The court concludes that under Kansas law, RTC does not qualify as a holder in due course.

■ No specific provision of FIRREA confers holder in due course status on the RTC. *F.D.I.C. v. Wood*, 758 F.2d 156, 159 (6th Cir.), *cert. denied*, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985) ("If the FDIC has [holder in due course] status, it must be as part of the federal common law."). The federal courts have held that the RTC does qualify under federal common law for holder in due course status, regardless of differing outcomes under state law:

When the FDIC [RTC] in its corporate capacity, as part of a purchase and assumption transaction, acquires a note in good faith, for value, and without actual knowledge of any defenses against the note, it takes the note free of all defenses that would not prevail against a holder in due course.

*Galloway*, 613 F.Supp. at 1987 (quoting *F.D.I.C. v. Wood*, 758 F.2d 156, 161 (6th Cir.1985)); *Davies*, 824 F.Supp. at 1013 ("The court finds that RTC qualifies as holder in due course under federal common law even if RTC cannot qualify as a holder in due

course under the Kansas Uniform Commercial Code.").

This creation of a "federal common law" is called into doubt by the recent United States Supreme Court decision *O'Melveny & Myers v. F.D.I.C.*, —— U.S. ——, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994). *O'Melveny* held that California law, rather than federal law, applied to the FDIC's suit as receiver for a failed savings and loan against the former counsel of the savings and loan for legal malpractice. The Court concluded that the FDIC stands in the shoes of the failed savings and loan under 12 U.S.C. § 1821(d)(2)(A)(i), "to work out its claims under state law, except where some provision in the extensive framework of FIRREA provides otherwise.. To create additional 'federal common-law' exceptions is not to 'supplement' this scheme, but to alter it." *Id.*, 114 S.Ct. at 2054.

Under *O'Melveny* analysis, the court must apply Kansas law to determine whether RTC is a holder in due course. *See R.T.C. v. Maplewood Investments*, 31 F.3d 1276, 1294 (4th Cir.1994) (Under *O'Melveny* analysis, the court held that Virginia law would not accord RTC holder in due course status because the note was non-negotiable.) As discussed above, Kansas law would not confer holder in due course status when the financial instruments are transferred in bulk to the RTC.

Although *O'Melveny* did not specifically involve the issue of whether the RTC has holder in due course status under federal common law, the Court's holding discourages the creation of federal common law by federal courts. The court concludes that it should not bar the defendant's affirmative defenses under the holder in due course theory. Instead, the court will determine whether the affirmative defenses are barred by the *D'Oench, Duhme* Doctrine and 12 U.S.C. § 1823(e).

## C. *D'Oench, Duhme and Section 1823(e)*

■ The defendants claim that enforcement of the notes are barred by several affirmative defenses including waiver and estoppel, setoff, failure to state a claim and failure to join necessary parties on the part of Pioneer Savings. The only support for these defenses is set forth in James Pohrer's affidavit which describes the claims of duress and the. tying arrangement. Mr. Pohrer states in the affidavit that he as was forced to purchase certain properties and that he did not consent to $640,000 in advances on the loans used for a down payment and debt servicing on the properties he was forced to purchase. Even if Mr. Pohrer's allegations are accepted as true, *D'Oench, Duhme* and section 1823(e) bar the defenses based on these allegations.

In its original conception, the *D'Oench, Duhme* doctrine barred the assertion of affirmative defenses against the FDIC based upon any agreement between a borrower and a bank which did not plainly appear on the face of an obligation or in the bank's official records. *D'Oench, Duhme & Co. v. F.D.I.C.*, 315 U.S. 447, 458, 62 S.Ct. 676, 680, 86 L.Ed. 956 (1942). The rationale behind the *D'Oench, Duhme* doctrine was to protect the interests banking authorities acquire from failed institutions against secret agreements that are not evidenced by an examination of the bank's records. *Id.* at 457, 62 S.Ct. at 679. A debtor who lends himself to a scheme or arrangement that tends to mislead bank examiners cannot raise any term or condition of that arrangement in defense against the FDIC in a suit on that note. *Id.* at 460, 62 S.Ct. at 680.

Congress codified the *D'Oench, Duhme* doctrine at 12 U.S.C. § 1823(e), which provides:

No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—

(1) is in writing,

(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(3) was approved by the board of directors of the depository institution or its loan

committee, which approval shall be reflected in the minutes of said board or committee, and

(4) has been, continuously, from the time of its execution, an official record of the depository institution.[2]

Defendants argue that the *D'Oench, Duhme* doctrine does not apply to their defenses because there was no secret "agreement." Defendants state in their response memorandum that a representative of Pioneer Savings and other affiliated institutions required as a condition of granting and continuing in existing financing relationships that Mr. Pohrer and his associates perform certain favors for Pioneer Savings including purchasing the properties which were the subjects of bad loans held by Pioneer Savings. Defendants contend that these claims do not rest upon the existence of or the enforcement of the terms of any secret agreement.

The defendants' arguments are not persuasive under the United States Supreme Court's interpretation of the term "agreement" contained in section 1823(e). In *Langley v. F.D.I.C.* the Court stated:

> Certainly, one who signs a facially unqualified note subject to an unwritten and unrecorded condition upon its repayment has lent himself to a scheme or arrangement that is likely to mislead the banking authorities, whether the condition consists of performance a of counterpromise (as in *D'Oench, Duhme*) or of the truthfulness of a warranted fact.

484 U.S. 86, 93, 108 S.Ct. 396, 402, 98 L.Ed.2d 340 (1987). The court concluded that a narrow construction of the term "agreement" would disserve the principles of *D'Oench, Duhme* and could not be used against the FDIC (or RTC) to avoid payment of a note. *Id.* at 92–93, 108 S.Ct. at 401–02.

According to the defendants' own arguments, they were required to accept the advances and to purchase the property as a "condition" for continued financing. These alleged requirements were not contained in any written agreement. Thus, the defen-

dants cannot use the existence of the side conditions as a defense to avoid payment on the notes under *D'Oench, Duhme* and *Langley*. Defendants could have protected themselves by insisting that the bank record any agreements or conditions.

Defendants additionally claim that a defense based on duress is not barred by the *D'Oench, Duhme* doctrine because it is not part of the agreement. The Court stated in *Langley* that "the real defense of fraud in the factum—that is, the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents—would take the instrument out of § 1823(e), because it would render the instrument entirely void." *Langley*, 484 U.S. at 93, 108 S.Ct. at 402 (citations omitted). If the defendants' claim of duress makes the agreement void, then RTC cannot claim the protection of *D'Oench, Duhme* and section 1823(e) because RTC would receive no "interest" when it acquired the notes. *Id.* at 93–94, 108 S.Ct. at 402–03.

 There are generally two types of duress. The "real" defense of duress is quite narrow. A contract is rendered void when a party to a contract is physically compelled by duress to manifest his or her consent to the contract. Restatement (Second) of Contracts § 174 (1981). The second type of duress occurs when a party to a transaction uses an improper threat that leaves the victim no reasonable alternative. This type of duress renders the contract voidable. *Id.* § 175. Improper threats include the modern notions of economic duress or business compulsion. *Id.* § 176 cmt. a. Although Kansas has not addressed the distinctions between the two categories of duress, there is no reason to believe that Kansas would not adopt the Restatement position which distinguishes between void and voidable duress. *See Merrel v. Research & Data, Inc.* 3 Kan.App.2d 48, 51, 589 P.2d 120 (1979) (the court adopted the Restatement of Contracts § 495 (1932) containing the definition of voidable duress).

---

**2.** Although *D'Oench, Duhme* and section 1823(e) refer to the FDIC, the RTC is deemed to have the same powers and rights as the FDIC in handling

the affairs of a failed banking institution. 12 U.S.C. § 1441a(b)(4); *R.T.C. v. Wellington Dev. Group*, 761 F.Supp. 731, 735 (D.Colo.1991).

In the present case, defendants have not set forth any evidence that they were unaware of the true nature of the transactions (fraud in the factum) or that they were physically forced to purchase property or accept advances on the loans (duress that renders the agreement void). Instead, the allegations, if proven, would constitute improper threat duress. This type of duress, also known as economic duress, would render the agreement voidable, not void. *Newton v. Uniwest Financial Corp.*, 967 F.2d 340, 347 (9th Cir.1992); *Bell & Murphy and Assoc., Inc. v. Interfirst Bank Gateway*, 894 F.2d 750, 754 (5th Cir.), *cert. denied*, 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990). "Thus, as to an agreement that would be merely voidable, the *D'Oench* doctrine remains applicable." *Newton*, 967 F.2d at 347 (citing *Langley*, 484 U.S. at 94, 108 S.Ct. at 402). The defendants' duress defense is barred by *D'Oench, Duhme* and section 1823(e) because, if allowed, it would diminish an interest of the RTC in an asset it has acquired, and the conditions of the agreement were not contained in any official record of the financial institution.

The defendants have admitted to signing the notes and guaranties that are the subject of this suit. The notes are in default and the plaintiff is entitled to foreclose on the mortgages and enforce the guaranties. As discussed above, none of the defendants' affirmative defenses bar recovery by the plaintiffs. The court concludes that the plaintiff RTC's motion for summary judgment should be granted.

### D. Counterclaims

■ As stated earlier in this memorandum and order, the RTC as receiver for Pioneer Savings has filed a motion for summary judgment (Doc. 93) relating to the counterclaims of the defendants. Counterclaimants A.W. Associates, Inc., James Pohrer and Fran Pohrer have not responded to the motion, and the time for response has passed. When a party fails to respond to a motion, "the motion will be considered and decided as an uncontested motion and ordinarily will be granted without further notice." D.Kan.Rule 206(g).

The court has thoroughly reviewed the memorandum and exhibits submitted in support of this summary judgment motion. The uncontroverted facts establish that the notes executed by A.W. Associates, Inc. are in default, and that the guaranties of the notes signed by the James and Fran Pohrer obligates them to pay the notes upon default. The evidence also establishes that the RTC is the holder of the notes and entitled to enforce the notes and guaranties.

A.W. Associates, Inc. and the Pohrers make two claims in their counterclaim against Pioneer Savings. First, A.W. Associates, Inc. and the Pohrers claim damages as a result of an alleged illegal tying arrangement under 12 U.S.C. § 1972.[3] Second, A.W. Associates, Inc. and the Pohrers claim damages under a theory of state law coercion and duress. Both of these counterclaims are based on the scheme described above in which a representative of Pioneer Savings allegedly forced the defendants to purchase properties and accept advances on the loans in exchange for continued financing.

For the same reasons as discussed above, both of these claims are barred by the *D'Oench, Duhme* doctrine and 12 U.S.C. § 1823(e). *See Newton v. Uniwest Corp.*, 967 F.2d 340, 347 (9th Cir.1992) (*D'Oench, Duhme* doctrine barred similar tying and duress claims); *Gustin v. F.D.I.C.*, 835 F.Supp. 503, 511 (W.D.Mo.1993) (duress and anti-tying violations do not survive the *D'Oench, Duhme* doctrine). These claims cannot be discovered from the face of the loan documents or any other security documents that defendants have signed. Defendants have admitted that they have not entered into any other written agreements with Pioneer Savings. For these reasons, the court finds that the motion of the RTC for summary judgment on the counterclaims should be granted.

IT IS, THEREFORE, BY THE COURT ORDERED that the Motion for Summary Judgment of Plaintiff Resolution Trust Corporation as Receiver for Pioneer Federal

---

**3.** The anti-tying statute for savings and loan associations is actually 12 U.S.C. § 1464(q).

Savings and Loan Association (Doc. 91) is granted.

IT IS FURTHER ORDERED that the Motion for Summary Judgment of Counterclaim Defendant Resolution Trust Corporation as Receiver for Pioneer Savings and Loan Association (Doc. 93) is granted.

IT IS FURTHER ORDERED that plaintiff shall submit a proposed order of judgment to the court on or before November 14, 1994. Defendants shall be given until November 28, 1994 to file any objections to the proposed form of judgment, following which time the court shall enter its judgment order.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**